IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DR. PAUL C. CLARK, SR., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COUNCIL OF UNIT OWNERS OF THE 100 HARBORVIEW DRIVE CONDOMINIUM ASSOCIATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 20-cv-01325-LKG <br> ) <br> ) Date: August 26, 2025 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

### I.  INTRODUCTION

In this civil action, the Plaintiffs, Dr. Paul C. Clark, Sr., Rebecca Delorme and Paul C. Clark, Jr. (collectively, the "Clarks"), assert a retaliation claim pursuant to the Fair Housing Act (the "FHA"), 42 U.S.C. § 3617, against the Defendant, Council of Unit Owners of the 100 Harborview Drive Condominium Association ("Harborview"), arising from their ownership of a condominium unit (the "Unit") located at 100 Harborview Drive in Baltimore, Maryland.  *See generally* ECF No. 17.  Harborview has moved for summary judgment on the Clarks' FHA retaliation claim, pursuant to Fed. R. Civ. P. 56.  ECF No. 95.  The Clarks have also moved for summary judgment on this claim, pursuant to Fed. R. Civ. P. 56.  ECF No. 104.  The parties' cross-motions are fully briefed.  ECF Nos. 95, 95-1, 104, 104-1, 106 and 107.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART and DENIES-in-PART** Harborview's motion for summary judgment (ECF No. 95); (2) **DENIES** the Clarks' cross-motion for summary judgment (ECF No. 104); and (3) **ENTERS JUDGMENT** summarily in favor of Harborview with regards to the Clarks' FHA retaliation claim based upon the conversion of their personal possessions.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this civil action, the Clarks assert an FHA retaliation claim against Harborview arising from their ownership of a condominium unit located within the Harborview Condominium. *See generally* ECF No. 17. In the second amended complaint, the Clarks allege that Harborview retaliated against them for previously filing several FHA claims against Harborview related to their familial status. *Id.* at ¶¶ 35-36. As relief, the Clarks seek, among other things, to recover monetary damages and punitive damages, and attorneys' fees and costs, from Harborview. *Id.* at Prayer for Relief.

The Parties

Plaintiff Dr. Paul C. Clark, Sr. is the owner of the Unit and he is a resident of Bethesda, Maryland. *Id.* at ¶ 8.

Plaintiff Rebecca Delorme is the spouse Dr. Clark and she is a resident of Bethesda, Maryland. *Id.* at ¶ 9.

Plaintiff Paul C. Clark, Jr. is the son of Dr. Clark and he is a resident of Bethesda, Maryland. *Id.* at ¶ 10.

Defendant Harborview is a condominium association that is organized under the laws of the State of Maryland and is comprised of the unit owners in the Harborview Condominium. *Id.* at ¶ 11; ECF No. 95-1 at 1. Harborview is responsible for governing the affairs of the Harborview Condominium and it is managed by a Board of Directors. ECF No. 17 at ¶ 11; ECF No. 95-1 at 1.

Case Background

As background, on October 27, 2009, Dr. Clark purchased the Unit located within the Harborview Condominium. ECF No. 17 at ¶ 12. The Clarks moved into the Unit in early November 2009. *Id.* at ¶ 13.

Several residents of the Harborview Condominium expressed concerns about noise from Dr. Clark's son, Paul Clark, Jr., who was five years old at the time. ECF No. 104-1 at 6-7; ECF

---

[1] The facts recited in this memorandum opinion are taken from the second amended complaint; Harborview's motion for summary judgment; the memorandum in support thereof; and the exhibits attached thereto; and the Clarks' cross-motion for summary judgment; the memorandum in support thereof; and the exhibits attached thereto. ECF Nos. 95, 95-1, 104 and 104-1. Unless otherwise stated, the facts recited herein are undisputed.

Nos. 104-4 (e-mails showing concern about child noises after the Unit was sold), 104-5 (e-mails showing concern about child noises after the Clarks moved into the Unit) and 104-6 (e-mail discussing options regarding the "noise issue"). The Clarks also filed several complaints against Harborview alleging FHA discrimination.

The Clarks' Prior Claims Against Harborview

Specifically, on January 28, 2010, the Clarks filed a complaint against Harborview with the United States Department of Housing and Urban Development ("HUD"), alleging FHA discrimination based upon familial status. ECF No. 95-1 at 2. The complaint was referred to the Maryland Commission on Human Relations ("MCHR") and, on August 10, 2010, the MCHR made a finding of no probable cause with regards to the complaint. *See id.* at 2-3; ECF No. 104-1 at 7.

On October 10, 2010, the Clarks filed a complaint against Harborview and its then-manager, Zalco Realty, Inc. ("Zalco"), in the Circuit Court for Baltimore City, alleging fraud and a violation of the Maryland Consumer Protection Act. ECF No. 95-1 at 3.

On September 15, 2011, the Clarks filed a complaint with HUD, alleging FHA discrimination and retaliation against, among others, Zalco and John Cochran, the then-President of Harborview's Board of Directors. *Id.* at 3.

On January 14, 2013, the Clarks filed a complaint against Harborview in the Circuit Court for Baltimore City, alleging that it failed to provide the Clarks with certain financial documents related to the Harborview Condominium. *Id.*

On May 8, 2013, the Clarks filed a complaint against Harborview in the Circuit Court for Baltimore City, alleging breach of contract, negligence and breach of fiduciary duty claims. *Id.*

On March 24, 2014, the Clarks filed a complaint against Harborview in the Circuit Court for Baltimore City, seeking emergency injunctive relief that would allow Dr. Clark to send his lawyers to Harborview Board of Directors and committee meetings. *Id.*

On October 3, 2014, the Clarks filed a civil action in this Court (the "FHA Litigation") against Mr. Cochran and Harborview, alleging various violations of the FHA. *Id.*

On January 6, 2020, the Clarks filed a complaint against Harborview in the Circuit Court for Baltimore City, challenging a lien placed on the Unit. *Id.* at 3-4.

The Bankruptcy Case

Relevant to the pending cross-motions, on March 9, 2016, Harborview filed a voluntary Chapter 11 petition with the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Case"). *Id.* at 2. Given this, the Court stayed the Clarks' FHA Litigation. *Id.* at 3.

Thereafter, the Clarks brought their FHA claims against Harborview in the Bankruptcy Case. *See id.* at 4; ECF No. 104-1 at 8. The Clarks also asserted a new claim for breach of contract, in which the Clarks alleged that Harborview violated its duty under the Harborview Condominium's By-Laws to maintain the common elements surrounding the Unit. ECF No. 104-1 at 8; ECF No. 17 at ¶ 16. Specifically, the Clarks alleged that they were forced out of their Unit as a result of water and pigeon feces infiltrating the Unit. ECF No. 104-1 at 7-8.

In October 2017, Harborview accepted liability as to the Clarks' breach of contract claim, and the parties negotiated the scope of work required to remediate the damage to the Unit. *Id.* at 9. Given this, the Bankruptcy Court ordered that Freddy Vazquez of Retro Environmental ("Retro) would perform the teardown and remediation services on the Unit, and that Harborview would pay for this work, in November 2017. *Id.*; ECF No. 104-16 at 1 and 4 (Bankruptcy Court Order dated November 17, 2017). And so, in February 2018, the Bankruptcy Court entered summary judgment in favor of the Clarks on their breach of contract claim and awarded the Clarks certain costs related to the repair of the Unit. ECF No. 95-1 at 4.

The Present Litigation

The Clarks commenced this FHA retaliation case on May 27, 2020. ECF No. 1. On July 31, 2020, and April 5, 2021, the Clarks amended the complaint to add additional allegations of retaliation since the commencement of this litigation. *See* ECF Nos. 11 and 17.

In the second amended complaint, the Clarks allege that Harborview retaliated against them for previously bringing FHA claims against Harborview in the FHA Litigation, the Bankruptcy Case and the present litigation, in violation of the FHA. ECF No. 17. In this regard, the Clarks allege that Harborview has retaliated against them in the following three ways:

First, the Clarks allege that Harborview converted their personal possessions during the remediation of the Unit. *Id.* at ¶¶ 20-24. In this regard, it is undisputed that Retro hired a subcontractor, AMRestore, to help perform the remediation of the Unit. ECF No. 95-1 at 7; ECF No. 104-1 at 9. It is also undisputed that, on December 15, 2017, AMRestore arrived at

4

the Unit to "pack out" certain personal possessions of the Clarks and to clean the Unit. ECF No. 95-2 at 32-34 (AMRestore Loss Scope Form), 35-41 (AMRestore's Certificate of Satisfaction and Completion of Services) and 42-44 (e-mails on AMRestore's access to Harborview Condominium); *see also* ECF No. 104-1 at 9.

The Clarks contend that Harborview failed to pay AMRestore for its remediation work on the Unit and that AMRestore is holding their personal possessions as bailment for the unpaid work. ECF No. 104-1 at 29. And so, the Clarks also contend that Harborview is responsible for the conversion of their personal possessions and that the conversion is in retaliation for their prior "alleged familial discrimination [complaints] under the FHA." ECF No. 104-1 at 29-30.

Second, the Clarks allege that, on December 4, 2019, Harborview sent them a demand letter and notice of intent to create a lien (the "Demand Letter"), which states that "the [Clarks] owed $29,705.02 in alleged unpaid assessments and late[] fees and $4,651.21 in interest" and that Harborview would seek a lien on the Unit if the Clarks did not pay these assessments and fees. ECF No. 17 at ¶ 27; *see also* ECF No. 104-35 (the Demand Letter). The Demand Letter also states that Harborview "reserve[s] the right to proceed with legal action" and Harborview "may file a lawsuit against Mr. Clark personally" if the Clarks did not pay the requested amount in full. ECF No. 104-35 at 2 (the Demand Letter). And so, the Clarks allege that the Demand Letter "is nothing more than retaliation against [them] for having brought claims against the Defendant under the FHA." ECF No. 17 at ¶ 28; *see also* ECF No. 104-35 (the Demand Letter).[2]

Lastly, the Clarks allege that, on January 27, 2021, Harborview published a litigation update (the "First Litigation Update") to the unit owners at Harborview Condominium that states, among other things, that "[i]n May 2019, Dr. Clark filed a second appeal to the District

---

[2] The Clarks contend that, on July 15, 2024, counsel for Harborview forwarded correspondence seeking payment for the "delinquent assessments" related to the Unit. ECF No. 104-1 at 15; *see also* ECF No. 104-43 (letter from Clarks' counsel confirming receipt of correspondence alleging overdue balance). The Clarks also contend that counsel for Dr. Clark responded to this correspondence and stated that the outstanding amounts had been paid by electronic transfer every month from November 2023 through August 2024, and that Harborview had rejected these payments. ECF No. 104-1 at 15; ECF No. 104-43 (alleging that Harborview "rejected" the Clarks' payments toward the lien and the assessments). In addition, the Clarks contend that, on December 4, 2024, they received a Notice of Intent to Record a Claim of Lien on behalf of Harborview seeking $171,324.78 in unpaid assessments, interest and attorneys' fees. ECF No. 104-1 at 15; *see also* ECF No. 104-61 (notice of intent to record a claim of lien).

5

Court regarding the Order Granting Plan Officer's Motion for Clarification Regarding Reorganized Debtor's Collection of Assessments." ECF No. 95-2 at 45-47 (the First Litigation Update); ECF No. 17 at ¶ 29. It is undisputed that the First Litigation Update provides information about the litigation history between the Clarks and Harborview, including a paragraph discussing the procedural history of the Clarks' FHA claims in this case. *See* ECF No. 95-2 at 47 (the First Litigation Update). The First Litigation Update also identifies the members of the Clark family by name. *See id.* at 46.

The Clarks also contend that, on August 2, 2023, Harborview published a second litigation update (the "Second Litigation Update"), which contains a discussion of "The Clark Family Claims in the Bankruptcy" and a one-page summary of the procedural history of this litigation. ECF No. 104-54 (the Second Litigation Update). It is undisputed that the Second Litigation Update was circulated to the unit owners at Harborview Condominium. *See id.* at 1; ECF No. 104-1 at 32.

The Clarks allege that the above actions by Harborview constitute retaliation under the FHA. *See generally* ECF No. 17. And so, the Clarks seek, among other things, to recover monetary damages and punitive damages, and attorneys' fees and costs, from Harborview. *Id.* at Prayer for Relief.

### B.  Relevant Procedural Background

The Clarks commenced this litigation on May 27, 2020, and they amended the complaint on July 31, 2020, and April 4, 2021. ECF Nos. 11 and 17. On November 20, 2024, Harborview filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF Nos. 95 and 95-1.

On December 29, 2024, the Clarks filed a response in opposition to Harborview's motion and a cross-motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF Nos. 104 and 104-1. On January 21, 2025, Harborview filed a reply brief and a response in opposition to the Clarks' cross-motion for summary judgment. ECF No. 106. On February 7, 2025, the Clarks filed a reply brief. ECF No. 107.

The parties' motions for summary judgment having been fully briefed, the Court resolves the pending motions.

### III. LEGAL STANDARDS

#### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). When faced with cross-motions for summary judgment, the Court must review each motion separately

7

on its own merits "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). When considering each individual motion, the Court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. *See Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996).

### B. Fair Housing Act And Retaliation Claims

The Fair Housing Act makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Relevant to the pending cross-motions, the FHA prohibits retaliation for certain protected activities and the statute provides that:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. And so, to prove a claim for retaliation under the FHA, a plaintiff must establish that: (1) the plaintiff was "engaged in protected activity"; (2) the Defendant "was aware of that activity"; (3) the defendant "took adverse action against the plaintiff"; "and (4) a causal connection existed between the protected activity and the asserted adverse action." *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016).

To establish an adverse action under the FHA, a plaintiff must show that the defendant's action was "objectively material." *Williams v. Arora Hills Homeowners Ass'n, Inc.*, No. 19-3370, 2021 WL 2226199, at *12 (D. Md. June 2, 2021). Given this, "an action is sufficiently 'adverse' if it could dissuade a reasonable person from the exercise of their rights." *Grp. Home on Gibson Island, LLC v. Gibson Island Corp.*, 144 F.4th 522, 536 (4th Cir. 2025) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Hall v. Greystar Mgmt. Servs., L.P.*, 28 F. Supp. 3d 490, 495 (D. Md. 2014). To establish a causal connection between an adverse action and FHA protected activity, a plaintiff must show that the defendant "took the actions it did was *because of her protected activity*." *Hall*, 637 F. App'x at 98 (emphasis in original). And so, a temporal proximity is one way to show a causal connection, but, "a court will not infer a causal link based on temporal proximity alone unless the adverse

8

action occurred 'very close' to, . . . or 'shortly after,' . . . the defendant became aware of the protected activity." *Id.* at 99 (citations omitted).

## IV. ANALYSIS

The parties have filed cross-motions for summary judgment, pursuant to Fed. R. Civ. P. 56, on the Clarks' FHA retaliation claim. ECF Nos. 95, 95-1, 104 and 104-1. In its motion for summary judgment, Harborview argues that it is entitled to summary judgment on the Clarks' FHA retaliation claim, because: (1) none of the actions taken by Harborview rise to the egregious level necessary to sustain a FHA retaliation claim; (2) the Clarks cannot prevail on their FHA retaliation claim based upon the conversion of their personal possessions, because Harborview took no action in connection with the moving and storage of these personal possessions; (3) the Clarks cannot prevail on their FHA retaliation claim based upon the Demand Letter, because the Demand Letter is not an adverse action under the FHA and Harborview had a legitimate, non-discriminatory reason for sending the Demand Letter; and (4) the Clarks cannot prevail on their FHA retaliation claim based upon the Litigation Updates, because the Litigation Updates are not an adverse action under the FHA and these updates were not made with a discriminatory intent. ECF No. 95-1 at 12-20. And so, Harborview requests that the Court enter summary judgment in its favor on the Clarks' FHA retaliation claim and dismiss this matter. *Id.* at 20.

In their response in opposition to Harborview's motion and cross-motion for summary judgment, the Clarks counter that Harborview is not entitled to summary judgment, because there are material facts in dispute in this case regarding their FHA retaliation claim. ECF No. 104-1 at 18-25. Alternatively, the Clarks also argue that they are entitled to summary judgment on their FHA retaliation claim, based upon the conversion of their personal possession and the Litigation Updates, because the undisputed material facts show that Harborview took these actions in retaliation for their prior FHA litigation. *Id.* at 25-34. And so, the Clarks request that the Court deny Harborview's motion for summary judgment and enter summary judgment in their favor with regards to their FHA retaliation claim based upon conversion of their personal possessions and the Litigation Updates. *Id.* at 34 and 38-39.

For the reasons set forth below, the undisputed material facts show that Harborview had no role in the conversion of the Clarks' personal possessions during the remediation of the Unit. But, the undisputed material facts do not show that the Demand Letter and Litigation Updates are not an "adverse action" under the FHA.

The evidentiary record before the Court also makes clear that there are material facts in dispute regarding: (1) whether the Demand Letter and Litigation Updates are causally connected to the Clarks' prior FHA claims and (2) whether the Clarks can show that Harborview's stated legitimate, non-discriminatory reasons for taking these alleged adverse actions are pretextual. And so, the Court: (1) **GRANTS-in-PART and DENIES-in-PART** Harborview's motion for summary judgment (ECF No. 95); (2) **DENIES** the Clarks' cross-motion for summary judgment (ECF No. 104); and (3) **ENTERS JUDGMENT** summarily in favor of Harborview with regards to the Clarks' FHA retaliation claim based upon the conversion of their personal possessions.

### A. The Undisputed Material Facts Show That The Conversion Of The Clarks' Possessions Is Not An Adverse Action Attributable To Harborview

As an initial matter, Harborview persuasively argues that it is entitled to summary judgment on the Clarks' FHA retaliation claim, based upon the conversion of the Clarks' personal possessions, because Harborview had no role in this action. To prevail on their FHA retaliation claim, the Clarks must show, among other things, that Harborview took adverse action against them. *See Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016). In this regard, the Court has held that "an action is sufficiently 'adverse' if it could dissuade a reasonable person from the exercise of their rights." *Grp. Home on Gibson Island, LLC v. Gibson Island Corp.*, 144 F.4th 522, 536 (4th Cir. 2025) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Hall v. Greystar Mgmt. Servs., L.P.*, 28 F. Supp. 3d 490, 495 (D. Md. 2014).

In this case, the undisputed material facts show that Harborview had no role in the conversion of the Clarks' personal possessions following the remediation of the Unit. In this regard, it is undisputed that the Bankruptcy Court ordered that a contactor, Retro, perform the remediation work on the Clarks' Unit. ECF No. 104-16 at 1 and 4 (Bankruptcy Court Order dated November 17, 2017). It is also undisputed that Retro hired AMRestore as a subcontractor to help perform the remediation of the Unit. ECF No. 95-1 at 7; ECF No. 104-1 at 9.

There is also no dispute in this case that, on December 15, 2017, AMRestore arrived at the Unit to "pack out" certain personal possessions of the Clarks and to clean the Unit. ECF No. 95-2 at 32-34 (AMRestore Loss Scope Form), 35-41 (AMRestore's Certificate of Satisfaction and Completion of Services) and 42-44 (e-mails on AMRestore's access to Harborview Condominium); *see also* ECF No. 104-1 at 9. In addition, it is undisputed that Dr.

Clark provided AMRestore with access to the Unit and that Harborview does not have a key to the Unit. ECF No. 95-2 at ¶ 55 (Feltenberger Decl.); ECF No. 95-2 at 43 (showing that "Dr. Clark provided access" to the Unit). And so, the undisputed material facts show that AMRestore and Retro were responsible for removing the Clarks' personal possessions from the Unit.

The Clarks, nonetheless, contend that AMRestore has continued to hold their personal possessions as bailment, because Harborview failed to pay AMRestore for its remediation work. ECF No. 104-1 at 26 and 29. But they provide no evidence to support this claim. *See id.* Rather, the undisputed material facts show that the Bankruptcy Court granted a request from the Bankruptcy Plan Officer to "negotiate directly with Retro to clean the [U]nit . . . and to pay Retro $77,500." ECF No. 104-28 (Plan Officer's motion for authority to negotiate resolution with Retro); *see also* ECF No. 104-1 at 29 (the Plaintiffs acknowledging that Harborview paid $77,000 for remediation of the Unit.).

Given this, the Plaintiffs have not shown that Harborview took an adverse action against them with regards to the conversion of their personal possessions. And so, the Court GRANTS Harborview's motion for summary judgment on the Clarks' FHA retaliation claim based upon the conversion of their personal possessions. Fed. R. Civ. P. 56.

### B. The Undisputed Material Facts Do Not Show That The Demand Letter And The Litigation Updates Are Not An Adverse Action

Harborview's arguments to show that the Demand Letter and Litigation Updates do not constitute an adverse action under the FHA are less persuasive for several reasons. ECF No. 95-1 at 14-20.

First, with regards to the Demand Letter, it is undisputed that Harborview sent the Clarks the Demand Letter and a notice of intent to create a lien, on or about December 4, 2019. *See* ECF No. 95-1 at 8; ECF No. 104-1 at 13; *see also* ECF No. 104-35 (the Demand Letter). The Demand Letter states, among other things, that "the [Clarks] owed $29,705.02 in alleged unpaid assessments and late[] fees and $4,651.21 in interest" and that Harborview would seek a lien on the Unit if the Clarks did not pay these assessments and fees. ECF No. 104-35 (the Demand Letter). The Demand Letter also states that Harborview "reserve[s] the right to proceed with legal action" and that Harborview "may file a lawsuit against Mr. Clark personally" if the Clarks did not pay the requested amount in full. *Id.* at 2. In addition, the Demand Letter states that

Harborview forwarded the Clarks' account to a debt collector "for collection of delinquent assessments due as a result of his ownership of the [Unit]" and that Harborview "intends to create a lien against [the Unit]" unless Dr. Clark, within 30 days: (1) makes payment in full; (2) disputes the debt with the debt collector's office; or (3) files a complaint in the Circuit Court for Baltimore City to determine whether probable cause exists for the establishment of a lien. *Id.* at 1.

While Harborview argues that the Demand Letter does not "remotely approach the level of egregiousness necessary to maintain an FHA claim," there can be no genuine dispute that the Demand Letter, and especially the threat to file a lien against the Clarks for unpaid fees and assessments, was an unwelcomed event that could have dissuaded the Clarks from exercising their rights under the FHA. *See* ECF No. 95-1 at 15; *see also Grp. Home on Gibson Island, LLC*, 144 F.4th at 536 (citation omitted); *Hall*, 28 F. Supp. 3d at 495. And so, the undisputed material facts in this case fail to show that the Demand Letter is not adverse action within the meaning of the FHA, as Harborview contends. *See Williams v. Arora Hills Homeowners Ass'n, Inc.*, No. 19-3370, 2021 WL 2226199, at *12 (D. Md. June 2, 2021).

The undisputed material facts similarly fail to show that the Litigation Updates are not an adverse action under the FHA. In this regard, it is undisputed that, on January 27, 2021, Harborview provided the First Litigation Update to the unit owners at Harborview Condominium and that this update states, among other things, that "[i]n May 2019, Dr. Clark filed a second appeal to the District Court regarding the Order Granting Plan Officer's Motion for Clarification Regarding Reorganized Debtor's Collection of Assessments." ECF No. 95-2 at 46 (the First Litigation Update). The First Litigation Update also provides information about the litigation history between the Clarks and Harborview, including a paragraph discussing the procedural history of the Clarks' FHA claims in this case, and the update identifies the members of the Clark family by name. *See* ECF No. 95-2 at 46-47 (the First Litigation Update). There is also no dispute that Harborview provided the Second Litigation Update to its unit owners on August 2, 2023, and that this update provides a discussion of "The Clark Family Claims in the Bankruptcy" and a one-page summary of the procedural history of this litigation. ECF No. 104-54 (the Second Litigation Update); *see also* ECF No. 104-1 at 32.

Harborview argues that the aforementioned Litigation Updates cannot constitute an adverse action under the FHA, because no false statements regarding the Clarks' unpaid

12

assessments and fees were made in these updates. ECF No. 95-1 at 17. But this fact, taken as true, simply does not establish that the Litigation Updates could not have dissuaded the Clarks from exercising their rights under the FHA. *See* ECF No. 95-1 at 17-19; *see also Grp. Home on Gibson Island, LLC*, 144 F.4th at 536 (citation omitted); *Hall*, 28 F. Supp. 3d at 495. And so, again, Harborview fails to show that the Litigation Updates are not adverse actions within the meaning of the FHA. *See Williams*, 2021 WL 2226199, at *12. For these reasons, the Court DENIES Harborview's motion for summary judgment on this issue.

### C. There Are Material Facts In Dispute Regarding Whether The Clarks Can Show A Causal Connection And That Harborview's Stated Reasons For The Demand Letter And Litigation Updates Are Pretextual

The evidence currently before the Court also shows that there are genuine disputes of material facts regarding whether the Demand Letter and the Litigation Updates are casually connected to the Clarks' prior FHA activity and whether Harborview's stated reasons for taking these actions are a pretext for FHA retaliation. To show a causal connection between the Demand Letter and the Litigation Updates and the Clarks' prior FHA activities, the Clarks must show that Harborview took these actions because of their protected activity under the FHA. *See Hall*, 637 F. App'x at 98. If the Clarks can establish the elements of a *prima facie* case of FHA retaliation, the burden then shifts to Harborview to articulate a legitimate, non-retaliatory reason for these actions, and if Harborview articulates such a reason, the Clarks bear the ultimate burden of showing that the reason was merely a pretext for retaliation. *See Williams*, 2021 WL 2226199, at *6.

As discussed above, the facts in this case regarding what occurred with respect to the Demand Letter and Litigation Updates are largely undisputed. ECF No. 104-35 (the Demand Letter); ECF No. 95-2 at 45-47 (the First Litigation Update); ECF No. 104-54 (the Second Litigation Update). But the evidence regarding *why* Harborview took these actions are very much in dispute and material to the resolution of the remaining aspects of the Clarks' FHA retaliation claim.

Notably, the Clarks contend that the Demand Letter "is nothing more than retaliation against [them] for having brought claims against the Defendant under the FHA." ECF No. 17 at ¶ 28; *see also* ECF No. 104-35 (the Demand Letter). To support this argument, the Clarks point to the text of the Demand Letter, the timing of this letter, their litigation contesting the lien amount and evidence showing their long history of asserting FHA claims against Harborview.

13

ECF No. 104-1 at 7-8 and 18-25; ECF No. 107 at 5-7.  The Clarks also allege that the Demand Letter is retaliatory, because they did not receive notice of the increases in the fees and assessments for the Unit until more than one year after these charges were increased, resulting in the late fees and interest charges.  ECF No. 17 at ¶ 26.

In contrast, Harborview contends that the Demand Letter constitutes a legitimate demand to recover unpaid assessments and fees on the Clarks' Unit and that it properly calculated and disclosed these outstanding charges to the Clarks.  ECF No. 95-1 at 14-16.  To support this argument, Harborview points to the text of the Demand Letter, its By-Laws and Affidavits from Linda Lampkin, Ursula Koenig Burgess, and Michael A. Feltenberger stating that the intent of the Demand Letter was to collect an outstanding debt.  *Id.* at 15 (citing Lampkin Decl. at ¶ 66, Burgess Decl. at ¶ 8 and Feltenberger Decl. at ¶ 66).

Harborview also contends that "it did send the increased assessment information" to the Clarks.  *See id.* at 16 (citing Feltenberger Decl. at ¶¶ 58-61 and 67-68; Lampkin Decl. at ¶¶ 58-61 and 67-68).  But it advances no evidence to support this claim.  *See id.*

The Court also observes that the deposition testimony of the Vice President of the Harborview Board of Directors, Dr. Janan Broadbent, raises many unanswered questions regarding Harborview's motivation for sending the Demand Letter.  During his deposition, Dr. Broadbent could not provide another example of when Harborview sought a lien against one of its residents for unpaid fees and assessments:

> Q [PLAINTIFFS' COUNSEL] Okay. To your knowledge, how many people -- how many residents since 2010 have had a condo lien entered against them by Harborview to the extent you even know?
>
> A [DR. BROADBENT] I don't even know.
>
> Q Is it a common occurrence, to your knowledge?
>
> A I don't think so, because most people pay what they owe -- or, I assume, arrangements are made.
>
> Q Have you seen arrangements be made for other residents?
>
> A Yes.
>
> Q In terms of Dr. Clark, were any arrangements made for any fees that he owed, to your knowledge?
>
> A I don't know.

ECF No. 104-49 at 19:1-17 (deposition transcript of Dr. Janan Broadbent). And so, that there are genuine issues as to many material facts regarding whether there is a causal connection between the Demand Letter and the Clarks' FHA activity, and the reason that Harborview sent the Demand Letter to the Clarks, that preclude summary judgment on the Clarks' FHA retaliation claim based upon the Demand Letter. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

There are also material facts in dispute regarding whether the Litigation Updates are connected to the Clarks' prior FHA activity and whether these updates were motivated by retaliatory animus. In this regard, the Clarks contend that the Litigation Updates were made in retaliation for their prior FHA claims against Harborview. ECF No. 17 at ¶¶ 29-34; ECF No. 104-1 at 30-34. To support this argument, the Clarks point to the evidence regarding their prior FHA complaints and litigation before, among others, the Circuit Court for Baltimore City and this Court. ECF No. 104-1 at 30-32. The Clarks also point to evidence of four state court lawsuits for unpaid fees and assessments, that Harborview brought against other residents of Harborview Condominium, for which Harborview did not provide similar litigation updates to its residents. *Id.* at 33.

Harborview counters that it had a legitimate, non-discriminatory reason for providing the Litigation Updates, because these updates are required and permissible under its By-Laws and Maryland law. ECF No. 95-1 at 17-19. To support this argument, Harborview points to evidence showing that its By-Laws "establish a legitimate basis for Harborview to disseminate relevant information regarding the condominium's business and affairs on a regular basis, including information about litigation." ECF No. 95-1 at 19 (citing Articles III, IX and X of the Harborview Condominium's By-Laws). Harborview also argues that the Maryland Condominium Act requires that it provide the Litigation Updates, because "any resale certificate, by law, must disclose the existence of any litigation against the condominium." *Id.* (citing Md. Code Ann., Real Prop. § 11-135(a)(4)(vii)).

The evidence cited by Harborview does not, however, show what motivated Harborview to make the Litigation Updates in this case. Given this, material facts remain in dispute about whether there is a causal connection between the Litigation Updates and the Clarks' protected activity under the FHA and whether Harborview's stated reasons for making the Litigation Updates are a pretext for retaliation under the FHA.

Given this, the above important factual disputes preclude the entry of summary judgment on the Clarks' FHA retaliation claim based upon the Litigation Updates. For these reasons, the Court must DENY Harborview's motion for summary judgment on the Clarks' FHA retaliation claims based upon the Demand Letter and the Litigation Updates and also DENY the Clarks' cross-motion for summary judgment on these claims. *See* Fed. R. Civ. P. 56.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART and DENIES-in-PART** Harborview's motion for summary judgment (ECF No. 95);

(2) **DENIES** the Clarks' cross-motion for summary judgment (ECF No. 104); and

(3) **ENTERS JUDGMENT** summarily in favor of Harborview with regards to the Clarks' FHA retaliation claim based upon the conversion of their personal possessions.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge